**In the United States Bankruptcy Court**
**Southern District of Texas**
**Houston Division**

| | | |
|---|---|---|
| In re Emergency Hospital Systems, LLC | § § § § § | Case No. 24-34683 <br> Chapter 11 |
| *Debtor* | | |

**Moparty Family Limited Partnership and KARE Family Limited Partnership LTD's Emergency Motion to Dismiss Unauthorized Chapter 11 Petition and Related Adversary Proceeding**

> This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.
>
> Represented parties should act through their attorney.
>
> Emergency relief has been requested. If the Court considers the motion on an emergency basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the emergency consideration is not warranted, you should file an immediate response.

> Moparty Family Limited Partnership and KARE Family Limited Partnership LTD request emergency relief on or before October 16, 2024.

To the Honorable Judge Rodriguez:

Moparty Family Limited Partnership and KARE Family Limited Partnership LTD are two of Emergency Hospital Systems, LLC's three members, and their designated representatives make up two-thirds of EHS's Board of Managers, which EHS's company agreement "vest[s]" with "management and control" of EHS. The Board of Managers never authorized this bankruptcy proceeding for EHS, and Delaflor-Weiss had no authority to do so unilaterally. The Court must dismiss EHS's unauthorized bankruptcy petition (case no. 24-34683) and its related adversary case (adversary case no. 24-03206).

It should do so on an emergency basis. A declaration of bankruptcy by EHS is or can be a default under EHS's contracts with lenders. And the bankruptcy filing has already garnered media attention.[1] Allowing this improper bankruptcy to even exist for longer than absolutely necessary thus threatens to cause real harm to EHS by

---

[1] https://www.bizjournals.com/houston/news/2024/10/09/emergency-hospital-systems-bankruptcy-lawsuit.html.

2

potentially exposing the company to liability to or contractual recourse by its lenders and impugning its public reputation.

## RELEVANT BACKGROUND

EHS is a limited liability company formed under Texas law.[2] Under its current company agreement — the — "[t]he management and control of the Company [EHS] is vested in the Board of Managers."[3] The company agreement details how the Board of Managers exercises that power.

First, it specifies how the Board of Managers must meet. Regular meetings generally require at least some prior notice of the "date, place, and hour" of the meeting, while special meetings require "ten (10) calendar days' prior notice to all managers by facsimile or delivery of written notice" and the notice must "specif[y]" the "business to be transacted at, or the purpose of, any special meeting."[4] Or the Board of Managers "may act without a meeting, without prior notice, and without a vote," but only "if a consent or consents in writing setting

---

[2] **Exhibit 6-1**, *Second Amended and Restated Company Agreement of Emergency Hospital Systems, LLC*, at 1; **Exhibit 6-2**, Ravi Moparty Declaration, at 1.
[3] Ex. 6-1, Company Agreement, § 7.1.1.
[4] Ex. 6-1, Company Agreement, § 7.4.

3

forth the action so taken is signed by the same percentage approval of the Managers . . . that would be required if taken by a vote of the Managers at a meeting of the Board of Managers."

Second, it specifies the votes required for a particular action. By default, "any and all acts of the Board of Managers requires the Super-Majority Approval of the Board of Managers."[5] So significant are some acts that they "always" require unanimity, like a decision "transferring all or substantially all of the Company's assets or any significant portion thereof, whether via sale[,] transfer, assignment, disposal, trade, exchange, quitclaim, surrender, release or abandonment[] [of] Company property[,] or any interests therein, other than in the ordinary course of business[.]"[6]

But recognizing that board meetings and formal votes are not always necessary for a company's more mundane, routine matters, the company agreement creates an "Operating Manager[.]" As the name suggests, their job is to "supervis[e]" the "day-to-day operations of [the]

---

[5] Ex. 6-1, Company Agreement, § 7.4; *accord id.* § 7.1.1 ("[A]ny matter to be voted on by the Board of Managers must be approved by Super-Majority Approval of the Board of Managers.")

[6] Ex. 6-1, Company Agreement, § 7.1.2.

4

Company."[7] The Board of Managers thus "delegate[d] to the Operating Manager the power and duties to manage the day-to-day operations of the Company" — such as implementing the Board of Managers' decision and authorizing executives to take certain acts to further EHS's "routine business needs[.]"[8] The role exists "for convenience and continuity of communications between Company executives[,]"and does not supplant Board of Manager's "group" control over EHS.[9]

Since at least late 2022, EHS has had three managers: Dr. Ravi Moparty, Roy Moparty, and Dr. Rafael Delaflor-Weiss. Each holds that role via appointment by one of the three entities forming EHS's Class A membership.[10] Ravi Moparty is the Moparty Family Limited Partnership's appointee, and Roy Moparty the KARE Family Limited Partnership LTD's.[11]

The managers cycle through the role of Operating Manager annually basis. Roy Moparty served in 2022, Ravi Moparty in 2023, and

---

[7] Ex. 6-1, Company Agreement, § 7.7.
[8] *See* Ex. 6-1, Company Agreement, § 7.7.6(a).
[9] Ex. 6-1, Company Agreement, § 7.7.
[10] Ex. 6-1, Company Agreement, § 7.1.1.
[11] Ex. 6-2, Ravi Moparty Dec., at 1-3.

Delaflor-Weiss holds the position for 2024.[12] The cycle starts over again in 2025, when, unless changed by unanimous vote, Roy Mopary again becomes Operating Manager.[13]

On October 3, 2024, Delaflor-Weiss filed a Chapter 11 petition in this Court for EHS[14] and at the same time began an adversary proceeding.[15] Though he claimed to do so after a "special meeting" held on August 2,[16] Delaflor-Weiss is the only who knew about it. The company agreement required specific and timely written notice to Roy Mopary and Ravi Moparty before Delaflor-Weiss could have a special meeting.[17] Yet the Mopartys received no notice of a special meeting for August 2, day, let alone notice that Delaflor-Weiss intended to convene *any* meeting at *any* time with the ultimate intent to place EHS into bankruptcy.[18] Neither voted to authorize this proceeding.[19] And they did

---

[12] Ex. 6-1, Company Agreement, § 7.7.1.

[13] Ex. 6-1, Company Agreement, § 7.7.1.

[14] *See generally* Dkt. 1, *Voluntary Petition for Non-Individuals Filing for Bankruptcy*

[15] *See generally* Dkt. 4, Adversary Complaint.

[16] Dkt. 1, Petition, at 5.

[17] Ex. 6-1, Company Agreement, § 7.4

[18] Ex. 6-2, Ravi Moparty Dec., at 1–3.

[19] Ex. 6-2, Ravi Moparty Dec., at 2-3.

6

not provide written consent for Delaflor-Weiss to dispense with the notice-and-vote requirements.[20] His role as Operating Manager did not allow him to unilaterally force EHS into bankruptcy either.[21]

Moparty Family Limited Partnership and KARE Family Limited Partnership LTD now move as interested parties, *see* 11 U.S.C. § 1109(b), for dismissal of EHS's unauthorized bankruptcy petition and the related adversary case.

## ARGUMENT

**I.   Delaflor-Weiss placed EHS into bankruptcy without authority, making the bankruptcy improper.**

"State law . . . determines" who can authorize a voluntary bankruptcy petition for an LLC like EHS. *In re Franchise Servs. of N.A., Inc.*, 891 F.3d 198, 207 (5th Cir. 2018). If the person who "purport[ed] to act" on the LLC's behalf lacked authority to place the entity into bankruptcy at all, a court "has no alternative but to dismiss the petition[.]" *Price v. Gurney*, 324 U.S. 100, 106 (Tex. 1945). Such is our case.

---

[20] Ex. 6-2, Ravi Moparty Dec., at 2–3.
[21] *See, e.g.*, Ex. 6-1, Company Agreement, § 7.7.

7

## A. The Board of Managers never authorized EHS's bankruptcy, notwithstanding Delaflor-Weiss's manufactured resolution.

Texas law instructs that an LLC's "governing authority . . . shall direct the management of the business and affairs of the company and exercise or authorize the exercise of the powers of the company as provided by the company agreement." Tex. Bus. Org. Code § 101.252(1). Per the company agreement, EHS's governing authority is its Board of Managers. *See id.* § 101.251. The company agreement vests total control over EHS in the Board of Managers alone: "The management and control of the Company is vested in the Board of Managers."[22] That includes the decision whether to place EHS into bankruptcy. *See, e.g., In re Lexington Hospitality Group, LLC*, 577 B.R. 676, 686 (Bankr. E.D. Ky. 2017) (holding similar language conferred authority to authorize bankruptcy). It was therefore incumbent on the Board of Managers alone to decide whether to pursue a voluntary bankruptcy.

Yet the Board of Managers never voted to do so. Remember that the company agreement requires, at minimum, two-thirds of EHS's

---

[22] Ex. 6-1, Company Agreement, § 7.1.1.

8

managers approve "any and all acts" the Board intends to take.[23] Two of EHS's three managers "never voted to approve the commencement of any bankruptcy proceeding by or on behalf of EHS generally," and "never voted to approve . . . the commencement of this pending bankruptcy proceeding specifically."[24] Nor did they execute any consents authorizing that action.[25] As such, the petition that created this action was ultra vires.

That is so despite Delaflor-Weiss's reliance of a self-serving resolution based on a special meeting he says happened "on August 2, 2024 at 10:00 a.m."[26] To properly call and hold a special meeting, Delaflor-Weiss had to provide ten business days' written notice to the Mopartys and "specif[y]" the "business to be transacted."[27] Neither Moparty received any notice of a special meeting on August 2, 2024 at 10:00 a.m., let alone notice of any meeting at which Delaflor-Weiss intended to propose a bankruptcy filing.[28] They did not consent to such

---

[23] Ex. 6-1, Company Agreement, § 7.4.
[24] Ex. 6-2, Ravi Moparty Dec., at 1–3.
[25] Ex. 6-2, Ravi Moparty Dec., at 2–3.
[26] Dkt. 1, Petition, at 5.
[27] Ex. 6-2, Ravi Moparty Dec., at 1–3.
[28] Ex. 6-2, Ravi Moparty Dec., at 2–3.

9

a meeting.[29] And they did not vote to authorize a bankruptcy filing. Whatever Delaflor-Weiss thinks he "conducted" on August 2, it was not a special meeting under the company agreement, and it did not entitle him to usurp the Board of Managers' exclusive control over whether EHS initiated bankruptcy proceedings.

  B.  **Delaflor-Weiss's power to "manage" EHS's "day-to-day operations" did not allow him to bypass the Board of Managers and unilaterally force EHS into bankruptcy.**

Delaflor-Weiss's role as Operating Manager did not entitle him to side-step the Board of Managers either. The company agreement creates an Operating Manager for a targeted purpose: "supervis[ing]" EHS's "day-to-day operations."[30] "Consistent with that purpose, the company agreement "delegate[s]" from the Board of Managers' otherwise exclusive and exhaustive control of the company, "the powers and duties to manage the *day-to-day operations* of" EHS.[31] Declaring bankruptcy "represents a radical departure" from a company's normal business operations. *In re DB Capital Holdings, LLC*, 463 B.R. 142 (Table), 2010 WL 4925811, at *5 (10th Cir. BAR Dec. 6, 2010). So the

---

[29] Ex. 6-2, Ravi Moparty Dec., at 2–3.
[30] Ex. 6-1, Company Agreement, § 7.7.
[31] Ex. 6-1, Company Agreement, § 7.7.6(a).

power to run an LLC day-to-day — conducting is ordinary business functions — is not the power to unilaterally take it into bankruptcy. *E.g.*, *id.* (powers that "pertain[ed] to . . . management . . . of the business in the ordinary course of business" did not confer authority to declare bankruptcy; *In re Karben4 Brewing, LLC*, 661 B.R. 392, 396 (Bankr. W.D. Wis. 2024) (same for power to "conduct the day-to-day business affairs of the LLC"). Delaflor-Weiss thus could not unilaterally cause EHS to declare bankruptcy.[32]

Indeed, bankruptcy is one of those decisions of such significance that "must always be authorized" by the unanimous Board of Managers. "The filing of a voluntary bankruptcy petition . . .automatically results in a transfer of all of the debtor's assets to the bankruptcy estate." *In re Amagin Prop. Grp., LLC*, No. 23-383-JWD-RLB, 2024 WL 457801, at *4 (M.D. La. Feb. 6, 2024). A company agreement requiring manager unanimity for any outside-the-ordinary-course-of-business "sale, exchange, financing, refinancing or mortgaging of" company proper bars a single manager from taking the company into bankruptcy. *E.g.*, *id.* at

---

[32] He implicitly recognized that fact by acting only based on a (void) resolution after a (claimed) special meeting of the Board of Managers.

11

*7 (holding same); *In re Mid-South Bus. Assocs., LLC*, 555 B.R. 565, 577 (Bankr. N.D. Miss. 2016) (same for provision requiring two-thirds vote). EHS's company agreement requires unanimity for any non-ordinary "transfer of all or substantially all of the Company's assets[.]"[33] No unanimous vote authorized this bankruptcy. As it began without authority, dismissal is appropriate.

## II. The Court should dismiss the adversary proceeding along with the main bankruptcy proceeding.

Dismissal of the unauthorized bankruptcy that the petition improperly initiated justifies dismissal of the adversary case too. "[A]s a general rule the dismissal . . . of a bankruptcy case should result in the dismissal of related proceedings." *Matter of Querner*, 7 F.3d 1199, 1201 (5th Cir. 1993). Principles of "economy, convenience, fairness, and comity" support application of that rule here. *See id.* Beyond the adversary complaint's filing, nothing has happened in that proceeding, and it invokes only state-law questions about the relationship between EHS and its managers.[34] And it would not be in federal court at all — it

---

[33] Ex. 6-1, Company Agreement, § 7.1.2(e).
[34] *See generally* Dkt. 4, Adversary Complaint

12

identifies no jurisdictional basis except for bankruptcy jurisdiction[35] — except for Delaflor-Weiss's ultra vires filing. The Court should dismiss the adversary proceeding along with this bankruptcy proceeding.

## CONCLUSION

Delaflor-Weiss began this bankruptcy proceeding for EHS without authority. The Court should thus dismiss the petition and the related adversary case. Moparty Family Limited Partnership and KARE Family Limited Partnership LTD also ask for all other relief to which they are entitled at law and in equity.

***

---

[35] Dkt. 4, Adversary Complaint, ¶ 1.

Respectfully submitted,

**ADAMS AND REESE LLP**

By:   /s/ Alton J. Hall, Jr.
      Alton J. Hall, Jr.
      Texas Bar No.: 08743740
      alton.hall@arlaw.com
      Kyle C. Steingreaber
      Texas Bar No.: 24110406
      kyle.steingreaber@arlaw.com
      LyondellBasell Tower
      1221 McKinney Street, Suite 4400
      Houston, Texas 77010
      Telephone: (713) 652-5151
      Facsimile: (713) 651-5252

*Counsel for Moparty Family Limited Partnership*

and

**THE PROBUS LAW FIRM**

By:   */s/ Matthew B. Probus*
      Matthew B. Probus
      Texas Bar No. 16341200
      Fed. I.D. No. 10915
      10497 Town and Country Way,
      Suite 930
      Houston, Texas 77024
      Telephone: (713) 258-2700
      Facsimile:  (713) 258-2701
      matthewprobus@theprobuslawfirm.com

*Counsel for KARE Family Limited Partnership, Ltd.*

14

## Certificate of Service

I certify that on October 9, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and served the following:

Kenna M Seiler
2700 Research Forest Dr.
Ste 100
The Woodlands, TX 77381

Jeannie L. Anderson
PO Box 3064
Houston, Texas 7725

Office of the U.S. Trustee
515 Rusk Avenue
Suite 3516
Houston, Texas 77002

/s/ Alton J. Hall, Jr.
Alton J. Hall, Jr.

## Certificate of Conference

I certify that prior to the filing of this motion, counsel for Moparty Family Limited Partnership and KARE Family Limited Partnership LTD conferred with the counsel purporting to act on behalf of the debtor and they are opposed.

/s/ Alton J. Hall, Jr.
Alton J. Hall, Jr.