UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: | § |
| | § |
| EMERGENCY HOSPITAL SYSTEMS, LLC,[1] | § § § CASE NO. 24-34683 |
| | § |
| DEBTOR. | § |

_____

**DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO PAY PRE-PETITION WAGES AND RELATED PAYROLL TAXES AND CRITICAL CONTRACT LABOR PRE-PETITION PAYMENTS**
_____

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response by October 18, 2024. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing. Represented parties should act through their attorney.**

**Emergency relief has been requested. If the Court considers the motion on an emergency basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the emergency consideration is not warranted, you should file an immediate response.**

**An emergency situation exists, as without the immediate ability to pay its employees and contract labor for pre-petition and post-petition payroll and contract labor payments, Debtor will be unable to operate its business and will likely quickly lose staff that are essential to its operation. To avoid the consequences of the emergency, relief is needed by <u>October 18, 2024</u>.**

TO THE HONORABLE EDUARDO RODRIGUEZ,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is Emergency Hospital Systems, LLC a/k/a Cleveland Emergency Hospital and d/b/a Cleveland Emergency Hospital. The Debtor's mailing address is 8901 FM 1960 Bypass Road, Humble, Texas 77338.

Page 1

COMES NOW the above-captioned Debtor ("Applicant" or the "Debtor") and, pursuant to 11 U.S.C. §§ 105(a), 363, 507(a)(4), 507(a)(5), and 541(d), requests authorization to pay pre-petition wages and related employer payroll taxes of current employees and critical contract labor pre-petition payments (the "Motion"). In support of the Motion, the Debtor respectfully states and represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter concerns the administration of this bankruptcy estate; accordingly, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested herein are 11 U.S.C. §§ 105(a), 363, 507(a)(4), 507(a)(5), and 541(d) and rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II.     FACTUAL BACKGROUND

2. On October 3, 2024, (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date of this Motion, no request for another trustee or examiner has been made, and no committee of unsecured creditors has been appointed or designated.

3. Debtor is a company that owns and operates multiple medical facilities, including hospitals, in the surrounding Houston area.

4. As of the Petition Date and the date of the filing of this Motion, Debtor employs approximately 265 employees. Additionally, the Debtor contracts with eight individuals as contractors, who are paid via 1099.

5. The Debtor pays its employees every two weeks.

6. As reflected on the attached Exhibit A, Debtor owes $634,168.73 in pre-petition wages to its current employees. Additionally, Debtor's employer taxes for such wages are in the amount of $47,056.22. The payments are in arrears, meaning that as of the Petition Date of October 3, 2024, these amounts were due to be paid ("Unpaid Wages"). Pre-petition, the eight contractors, identified on Exhibit A, are owed a total of $34,966.71.

7. Currently, Debtor also owes post-petition wages to its current employees in an amount of $48,467.15. Debtor's employer taxes for such wages are in the amount of $3,596.33.

8. No current employee is owed more than $15,150.00 in aggregate for wages, PTO, Sick Leave, or Benefits Program (together, the "Compensation") earned within 180 days before the date of the filing of the petition. The Contractors are also owed, in the aggregate, the post-petition amount of $2,672.37.

9. In total, Debtor seeks authorization to pay the following:

10. Total Payroll: $740,300.54.

### III.    RELIEF REQUESTED

11. By this Motion, Debtor seeks entry of an Order under sections 105(a), 363, 507(a)(4), 507(a)(5), and 541(d) of the Bankruptcy Code authorizing it, in accordance with stated policies (as modified from time to time), to pay the above identified pre-petition obligations to its current employees (the "Employees") and to the eight contractors as "critical vendors." These pre-petition obligations include (a) amounts owed for wages, salaries, and taxes attributable thereto. Collectively, these items will be referred to as "Pre-Petition Compensation."

### IV.    BASIS FOR REQUESTED RELIEF

12. Debtor believes that all of the amounts owed to employees covered by this Emergency Motion are entitled to priority-claim status under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code. Section 507(a)(4) of the Bankruptcy Code grants employees priority claims for:

> . . . allowed unsecured claims, but only to the extent of $15,150 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for— wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor.

11 U.S.C. § 507(a)(4).

13. Likewise, under section 507(a)(5) of the Bankruptcy Code, employees are granted a priority claim under the following circumstance(s):

> . . . allowed unsecured claims for contributions to an employee benefit plan (a) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only (b) for each such plan, to the extent of — (i) the number of employees covered by each such plan multiplied by $15,150; less (ii) the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. § 507(a)(5).

14. Finally, to the extent funds for taxes are held in trust by Debtor, those funds are not property of the bankruptcy estate under section 541(d) of the Bankruptcy Code, which excludes "property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest." It is well established under section 541(d) of the Bankruptcy Code that taxes collected on behalf of taxing authorities are not property of the estate. Here, amounts

withheld and deducted from employees' checks (as noted above) are funds held in trust by Debtor for the benefit of another.

15. As such, these claims would be entitled to payment in full under any chapter 11 plan.

16. Authorizing Debtor to make these payments at this time will affect only the timing of such payments. To the extent that such claims are not entitled to priority-claim status in the case of the eight 1099 contractors, their payment is justified under the "doctrine of necessity."

17. Courts have used section 105(a) of the Bankruptcy Code, which codifies the equitable powers of bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]," to authorize the post-petition payment of contractor claims like those noted herein to preserve Debtor's going-concern value.[2]

18. The bankruptcy court's exercise of its authority under the "doctrine of necessity" is appropriate to carry out specific provisions of chapter 11—sections 1107(a), 1108 and 363(b)(l) of the Bankruptcy Code—that authorize a debtor in possession to maintain and to operate Debtor's business and use estate property outside of the ordinary course of business. Indeed, a debtor in possession operating a business under section 1108 of the Bankruptcy Code has a duty to protect

---

[2] *See Miltenberger v. Logansport, Crawfordsville and Southwestern Ry. Co.*, 106 U.S. 286, 311 (1882) (holding that "[m]any circumstances may exist which may make it necessary and indispensable to . . . the preservation of the property, for the receiver to pay pre-existing debts of certain classes out of the earnings of the receivership); *see also Mich. Bureau of Workers' Disability Comp. v. Chateaugay (In re Chateaugay Corp.)*, 80 B.R. 279, 285-87 (S.D.N.Y. 1987) (finding that a court's equitable powers include authorizing a debtor to pay prepetition debts). As such, a bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (citing *Miltenberger*, 106 U.S. at 311).

and to preserve the going-concern value of an operating business, and pre-petition claims may be paid if necessary to perform the debtor's duty.[3]

19. A bankruptcy court's exercise of its authority under section 105(a) of the Bankruptcy Code is also appropriate to carry out two central policies underlying Chapter 11: (a) to permit the successful rehabilitation of the debtor and (b) to preserve going concern value and maximize property available to satisfy all creditors. Numerous courts have used their section 105(a) equitable powers under the "necessity of payment" doctrine to authorize payment of a debtor's prepetition obligations where, as here, such payment is necessary to effectuate the "paramount purpose" of chapter 11 reorganization, which is to prevent the debtor from going into liquidation and to preserve the debtor's potential for rehabilitation.

20. This doctrine also has been invoked if nonpayment of a prepetition contractual obligation would trigger a withholding of services essential to the debtor's business reorganization plan. The Court in *In re CoServ*, LLC, 273 B.R. 487 (Bankr. N.D. Tex. 2002) found that payment of "critical vendors" can be authorized under section 105 of the Bankruptcy Code when (i) it is critical that the debtor deal with the claimant, (ii) if the debtor doesn't deal with the claimant, the debtor risks harm that is disproportionate to the amount of the claimant's prepetition claim, and (iii) there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim. *Id.* at 498. For the reasons set forth above, the Debtor submits that the three factor *CoServ* test is satisfied in this case as to the contractor claims. The contractors are owed $37,639.08 for contract services. Each of these contractors has specific training or

---

[3] *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim.").

certification to perform those contract services. Replacing these contractors would be invasive and time-consuming and would certainly outweigh the $37,639.08 owed.

21. Debtor has sufficient cash reserves to pay the Unpaid Wages and the contractor claims. In the event any of the employees or contractors cease working for Debtor at the time of payment, the forgoing payments to any such departing employee or contractor shall not be authorized. In the event that any of the employees or contractors have been pre-paid pursuant to prior order of the Court any amount for which they will not perform as an employee or contractor, such pre-paid, unearned amounts may be deducted from any payment authorized under this Motion.

22. The relief sought herein is essential to the success of Debtor's chapter 11 case. Here, to achieve success, it is critical that the employees and contractors be paid without interruption so long as they remain employed and that Debtor continues to honor its existing practices and policies for the pecuniary benefit of the employees and contractors. Such payments are necessary to prevent irreparable harm to the morale of the employees and contractors at the very time when its dedication, confidence, and cooperation are vital to this case.

### V.   PRAYER

BASED UPON THE FOREGOING, Debtor requests that this Court enter an Order: 1) authorizing Debtor to pay Unpaid Wages and payments to contractors, so long as they remain employed and performing as contracted; and 2) awarding Debtor such other and further relief that this Court deems just and proper.

Dated: October 15, 2024                    Respectfully submitted,

                                           SEILER RAPP & GUERRA, PLLC

                                           _[signature: Kenna M. Seiler]_

        Kenna M. Seiler
State Bar No. 13944250
Southern District Bar No. 16468
kseiler@srg-law.com
Megan Rapp
Texas Bar No. 24073924
mrapp@srg-law.com
2700 Research Forest Drive, Suite 100
The Woodlands, Texas 77381
(281) 419-7770
(346) 223-0283– Facsimile

PROPOSED COUNSEL FOR EMERGENCY HOSPITAL SYSTEMS, LLC

## CERTIFICATE OF ACCURACY

I certify that the foregoing emergency motion is accurate to the best of my knowledge.

/s/ *Kenna M. Seiler*
Kenna Seiler

## CERTIFICATE OF SERVICE

I certify that on October 15, 2024, a true and correct copy of this document was served via this Court's ECF notification system or United States first-class mail to (a) the Office of the United States Trustee for the Southern District of Texas (b) the holders of the twenty (20) largest unsecured claims against the Debtor on an aggregate basis; and (c) those parties requesting notice pursuant to Bankruptcy Rule 2002, as listed on the attached list.

/s/ *Kenna M. Seiler*
Kenna M. Seiler