In the United States Bankruptcy Court
Southern District of Texas
Houston Division

| | | |
|---|---|---|
| In re Emergency Hospital Systems, LLC | § § § § | Case No. 24-34683<br>Chapter 11 |
| *Debtor* | | |

**Moparty Family Limited Partnership's Response to Emergency Motion to Use Cash Collateral (Dkt. 16), Emergency Motion to Pay Prepetition Claims (Dkt. 17), and Emergency Motion to Pay Prepetition Wages (Dkt. 18)**

To the Honorable Judge Rodriguez:

Twelve days after filing for bankruptcy, Emergency Hospital Systems, LLC has finally filed motions to provide for its continued existence. That inexplicable delay only underscores the more fundamental issue — EHS never had the authority to begin this proceeding at all. "[U]nder the Bankruptcy Act the power of the court to shift the management of a corporation from one group to another, to settle intracorporate disputes, and to adjust intracorporate claims is strictly limited to those situations where a petition has been approved." *Price v. Gurney*, 324 U.S. 100, 106 (1945). So for the same reasons that Moparty Family Limited Partnership first moved to dismiss, the Court should deny EHS's belated first-day motions.

1

## RELEVANT BACKGROUND

EHS is a limited liability company formed under Texas law.[1] Under its current company agreement — the — "[t]he management and control of the Company [EHS] is vested in the Board of Managers."[2] The company agreement details how the Board of Managers exercises that power.

First, it specifies how the Board of Managers must meet. Regular meetings generally require at least some prior notice of the "date, place, and hour" of the meeting, while special meetings require "ten (10) calendar days' prior notice to all managers by facsimile or delivery of written notice" and the notice must "specif[y]" the "business to be transacted at, or the purpose of, any special meeting."[3] Or the Board of Managers "may act without a meeting, without prior notice, and without a vote," but only "if a consent or consents in writing setting forth the action so taken is signed by the same percentage approval of

---

[1] **Dkt. 6-1**, *Second Amended and Restated Company Agreement of Emergency Hospital Systems, LLC*, at 1; **Dkt 6-2**, Ravi Moparty Declaration, at 1.

[2] Dkt. 6-1, Company Agreement, § 7.1.1.

[3] Dkt. 6-1, Company Agreement, § 7.4.

the Managers . . . that would be required if taken by a vote of the Managers at a meeting of the Board of Managers."

Second, it specifies the votes required for a particular action. By default, "any and all acts of the Board of Managers requires the Super-Majority Approval of the Board of Managers."[4] So significant are some acts that they "always" require unanimity, like a decision "transferring all or substantially all of the Company's assets or any significant portion thereof, whether via sale[,] transfer, assignment, disposal, trade, exchange, quitclaim, surrender, release or abandonment[] [of] Company property[,] or any interests therein, other than in the ordinary course of business[.]"[5]

But recognizing that board meetings and formal votes are not always necessary for a company's more mundane, routine matters, the company agreement creates an "Operating Manager[.]" As the name suggests, their job is to "supervis[e]" the "day-to-day operations of [the] Company."[6] The Board of Managers thus "delegate[d] to the Operating

---

[4] Dkt. 6-1, Company Agreement, § 7.4; *accord id.* § 7.1.1 ("[A]ny matter to be voted on by the Board of Managers must be approved by Super-Majority Approval of the Board of Managers.")

[5] Dkt. 6-1, Company Agreement, § 7.1.2.

[6] Dkt. 6-1, Company Agreement, § 7.7.

3

Manager the power and duties to manage the day-to-day operations of the Company" — such as implementing the Board of Managers' decisions and authorizing executives to take certain acts to further EHS's "routine business needs[.]"[7] The role exists "for convenience and continuity of communications between Company executives[,]"and does not supplant the Board of Manager's "group" control over EHS.[8]

Since at least late 2022, EHS has had three managers: Dr. Ravi Moparty, Roy Moparty, and Dr. Rafael Delaflor-Weiss. Each holds that role via appointment by one of the three entities forming EHS's Class A membership.[9] Ravi Moparty is the Moparty Family Limited Partnership's appointee, and Roy Moparty the KARE Family Limited Partnership, Ltd.'s[10]

The managers cycle through the role of Operating Manager annually. Roy Moparty served in 2022, Ravi Moparty in 2023, and Delaflor-Weiss holds the position for 2024.[11] The cycle starts over again

---

[7] *See* Dkt. 6-1, Company Agreement, § 7.7.6(a).
[8] Dkt. 6-1, Company Agreement, § 7.7.
[9] Dkt. 6-1, Company Agreement, § 7.1.1.
[10] Dkt. 6-2, Ravi Moparty Dec., at 1-3.
[11] Dkt. 6-1, Company Agreement, § 7.7.1.

4

in 2025, when, unless changed by unanimous vote, Roy Moparty again becomes Operating Manager.[12]

On October 3, 2024, Delaflor-Weiss filed a Chapter 11 petition in this Court for EHS[13] and at the same time began an adversary proceeding.[14] Though he claimed to do so after a "special meeting" held on August 2,[15] Delaflor-Weiss is the only who knew about it. The company agreement required specific and timely written notice to Roy Moparty and Ravi Moparty before Delaflor-Weiss could have a special meeting.[16] Yet the Mopartys received no notice of a special meeting for August 2, let alone notice that Delaflor-Weiss intended to convene *any* meeting at *any* time with the ultimate intent to place EHS into bankruptcy.[17] Neither voted to authorize this proceeding.[18] And they did not provide written consent for Delaflor-Weiss to dispense with the

---

[12] Dkt. 6-1, Company Agreement, § 7.7.1.

[13] *See generally* Dkt. 1, *Voluntary Petition for Non-Individuals Filing for Bankruptcy*

[14] *See generally* Dkt. 4, Adversary Complaint.

[15] Dkt. 1, Petition, at 5.

[16] Dkt. 6-1, Company Agreement, § 7.4

[17] Dkt. 6-2, Ravi Moparty Dec., at 1–3.

[18] Dkt. 6-2, Ravi Moparty Dec., at 2-3.

notice-and-vote requirements.[19] His role as Operating Manager did not allow him to unilaterally force EHS into bankruptcy either.[20]

For twelve days, EHS did essentially nothing in this Court to ensure its continued viability. It did not seek an order allowing it to use cash collateral, *see* 11 U.S.C. § 363(c)(2), allowing it to obtain secured credit, *see id.* § 364(b)–(d), setting deposits as adequate assurance for payment of its utilities, *see id.* § 366(b), (c)(2), or permitting it to pay prepetition debts such as wages for employees or critical vendor debt, *see generally In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 369 (Bankr. S.D. Tex. 2000). Indeed, only after Moparty Family Limited Partnership raised those glaring those glaring deficiencies on October 14 as grounds for emergency consideration of its motion to dismiss the bankruptcy for lack of authority did EHS act.[21]

On October 15, it filed three motions: an emergency motion to use cash collateral (dkt. 16), an emergency motion to pay prepetition claims (dkt. 17), and an emergency motion to pay prepetition wages (dkt. 18).

---

[19] Dkt. 6-2, Ravi Moparty Dec., at 2–3.
[20] *See, e.g.*, Dkt. 6-1, Company Agreement, § 7.7.
[21] *See generally* Dkt. 6, Emergency Motion to Dismiss; Dkt. 12, Emergency Motion to Reconsider.

Moparty Family Limited Partnership responds to those motions as an interested party. *See* 11 U.S.C. § 1109(b). Because Delaflor-Weiss never had authority to place EHS into bankruptcy, the Court should deny EHS's emergency motions and dismiss the bankruptcy.

## ARGUMENT

I. **Delaflor-Weiss placed EHS into bankruptcy without authority, making any relief under the Bankruptcy Code improper and requiring dismissal of the entire proceeding.**

"State law . . . determines" who can authorize a voluntary bankruptcy petition for an LLC like EHS. *In re Franchise Servs. of N. Am., Inc.*, 891 F.3d 198, 207 (5th Cir. 2018). If the person who "purport[ed] to act" on the LLC's behalf lacked authority to place the entity into bankruptcy at all, a court "has no alternative but to dismiss the petition[.]" *Price*, 324 U.S. at 106. Since the propriety of a bankruptcy filing goes to the core of the Court's "power" to act under the Bankruptcy Code, *In re Franchise Servs. of N. Am.*, 891 F.3d at 207, the Court must resolve the "threshold" authority issue before deciding the merits of EHS's motions, *see, e.g.*, *In re Chi. S. Loop Hotel Owner, LLC*, No. 23-02595, 2023 WL 3643533, at *1 (Bankr. N.D. Ill. May 24, 2023) (doing similarly). EHS had no authority to enter bankruptcy.

7

A.   **The Board of Managers never authorized EHS's bankruptcy, notwithstanding Delaflor-Weiss's manufactured resolution.**

Texas law instructs that an LLC's "governing authority . . . shall direct the management of the business and affairs of the company and exercise or authorize the exercise of the powers of the company as provided by the company agreement." Tex. Bus. Org. Code § 101.252(1). Under the company agreement, EHS's governing authority is its Board of Managers. *Accord id.* § 101.251. The company agreement vests total control over EHS in the Board of Managers alone: "The management and control of the Company is vested in the Board of Managers."[22] That includes the decision whether to place EHS into bankruptcy. *See, e.g.*, *In re Lexington Hospitality Group, LLC*, 577 B.R. 676, 686 (Bankr. E.D. Ky. 2017) (holding similar language conferred authority to authorize bankruptcy). It was therefore incumbent on the Board of Managers alone to decide whether to pursue a voluntary bankruptcy.

Yet the Board of Managers never voted to do so. Remember that the company agreement requires, at minimum, two-thirds of EHS's

---

[22] Dkt. 6-1, Company Agreement, § 7.1.1.

8

managers approve "any and all acts" the Board intends to take.[23] Two of EHS's three managers "never voted to approve the commencement of any bankruptcy proceeding by or on behalf of EHS generally," and "never voted to approve . . . the commencement of this pending bankruptcy proceeding specifically."[24] Nor did they execute any consents authorizing that action.[25] As a result, the petition that created this action was ultra vires.

That is so despite Delaflor-Weiss's reliance on a self-serving resolution based on a special meeting he says happened "on August 2, 2024 at 10:00 a.m."[26] To properly call and hold a special meeting, Delaflor-Weiss had to provide ten business days' written notice to the Mopartys and "specif[y]" the "business to be transacted."[27] Neither Moparty received any notice of a special meeting on August 2, 2024 at 10:00 a.m., let alone notice of any meeting at which Delaflor-Weiss intended to propose a bankruptcy filing.[28] They did not consent to such

---

[23] Dkt. 6-1, Company Agreement, § 7.4.
[24] Dkt. 6-2, Ravi Moparty Dec., at 1–3.
[25] Dkt. 6-2, Ravi Moparty Dec., at 2–3.
[26] Dkt. 1, Petition, at 5.
[27] Dkt. 6-2, Ravi Moparty Dec., at 1–3.
[28] Dkt. 6-2, Ravi Moparty Dec., at 2–3.

9

a meeting.[29] And they did not vote to authorize a bankruptcy filing. Whatever Delaflor-Weiss thinks he "conducted" on August 2, it was not a special meeting under the company agreement, and it did not entitle him to usurp the Board of Managers' exclusive control over whether EHS initiated bankruptcy proceedings.

> **B.     Delaflor-Weiss's power to "manage" EHS's "day-to-day operations" did not allow him to bypass the Board of Managers and unilaterally force EHS into bankruptcy.**

Delaflor-Weiss's role as Operating Manager did not entitle him to side-step the Board of Managers either. The company agreement creates an Operating Manager for a targeted purpose: "supervis[ing]" EHS's "day-to-day operations."[30] "Consistent with that purpose, the company agreement "delegate[s]" from the Board of Managers' otherwise exclusive and exhaustive control of the company "the powers and duties to manage the *day-to-day operations* of" EHS.[31] Declaring bankruptcy "represents a radical departure" from a company's normal business operations. *In re DB Capital Holdings, LLC*, 463 B.R. 142 (Table), 2010 WL 4925811, at *5 (10th Cir. BAR Dec. 6, 2010). So the

---

[29] Dkt. 6-2, Ravi Moparty Dec., at 2–3.
[30] Dkt. 6-1, Company Agreement, § 7.7.
[31] Dkt. 6-1, Company Agreement, § 7.7.6(a).

10

power to run an LLC day-to-day — conducting is ordinary business functions — is not the power to unilaterally take it into bankruptcy. *E.g.*, *id.* (powers that "pertain[ed] to . . . management . . . of the business in the ordinary course of business" did not confer authority to declare bankruptcy); *In re Karben4 Brewing, LLC*, 661 B.R. 392, 396 (Bankr. W.D. Wis. 2024) (same for power to "conduct the day-to-day business affairs of the LLC"). Delaflor-Weiss thus could not unilaterally cause EHS to declare bankruptcy.[32]

Indeed, bankruptcy is one of those decisions of such significance that it "must always be authorized" by the unanimous Board of Managers. "The filing of a voluntary bankruptcy petition . . . automatically results in a transfer of all of the debtor's assets to the bankruptcy estate." *In re Amagin Prop. Grp., LLC*, No. 23-383-JWD-RLB, 2024 WL 457801, at *4 (M.D. La. Feb. 6, 2024). A company agreement requiring manager unanimity for any outside-the-ordinary-course-of-business "sale, exchange, financing, refinancing or mortgaging of" company property thus bars a single manager from taking the

---

[32] He implicitly recognized that fact by acting only based on a (void) resolution after a (claimed) special meeting of the Board of Managers.

11

company into bankruptcy. *E.g.*, *id.* at \*7 (holding same); *In re Mid-South Bus. Assocs., LLC*, 555 B.R. 565, 577 (Bankr. N.D. Miss. 2016) (holding same for provision requiring two-thirds vote). EHS's company agreement requires unanimity for any non-ordinary "transfer of all or substantially all of the Company's assets[.]"[33] No unanimous vote authorized this bankruptcy. As it began without authority, dismissal is appropriate.

II. **If the Court concludes that it has authority, Moparty Family Limited Partnership does not otherwise object to entry of the requested emergency orders.**

EHS's decision to file bankruptcy and then sit on its hands has pushed EHS to the edge.[34] Moparty Family Limited Partnership's only opposition to the emergency motions is their impropriety in the first place. If the Court concludes that Delaflor-Weiss did have authority to place EHS into bankruptcy, Moparty Family Limited Partnership does not otherwise oppose EHS's emergency motions.

---

[33] Dkt. 6-1, Company Agreement, § 7.1.2(e).
[34] *See generally, e.g.*, Dkt. 12, Emergency Motion to Reconsider.

## CONCLUSION

The conclusion that Delaflor-Weiss began this bankruptcy proceeding for EHS without authority precludes any need to consider EHS's emergency motions on the merits. The Court should dismiss the bankruptcy. Moparty Family Limited Partnership also asks for all other relief to which it is entitled at law and in equity.

***

Respectfully submitted,

**ADAMS AND REESE LLP**

By: /s/ *Alton J. Hall, Jr.*
Alton J. Hall, Jr.
Texas Bar No.: 08743740
alton.hall@arlaw.com
Kyle C. Steingreaber
Texas Bar No.: 24110406
kyle.steingreaber@arlaw.com
LyondellBasell Tower
1221 McKinney Street, Suite 4400
Houston, Texas 77010
Telephone: (713) 652-5151
Facsimile: (713) 651-5252

*Counsel for Moparty Family Limited Partnership*

## Certificate of Service

I certify that on October 16, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas

/s/ *Alton J. Hall, Jr.*
Alton J. Hall, Jr.