UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **EMERGENCY HOSPITAL SYSTEMS, LLC,**[1] | § | **CASE NO. 24-34683** |
| | § | |
| | § | |
| **DEBTOR.** | § | |

### DEBTOR'S RESPONSE IN OPPOSITION TO MOPARTY FAMILY LIMITED PARTNERSHIP AND KARE FAMILY LIMITED PARTNERSHIP, LTD.'S EMERGENCY MOTION TO DISMISS UNAUTHORIZED CHAPTER 11 PETITION AND RELATED ADVERSARY PROCEEDING (DKT. 6)

Debtor Emergency Hospital Systems, LLC ("Debtor" or "EHS") files this Response in Opposition to Moparty Family Limited Partnership and KARE Family Limited Partnership's (collectively, "Movants") Emergency Motion to Dismiss Unauthorized Chapter 11 Petition and Related Adversary Proceeding, respectfully shows as follows.

### INTRODUCTION

The Court should deny the Motion to Dismiss, because Dr. Rafael Delaflor-Weiss (hereafter, "Delaflor") absolutely had authority to file this bankruptcy and the related adversary proceeding. Movants' rely on the Company Agreement in arguing that this bankruptcy is unauthorized. Yet, the Company Agreement is silent on the procedures for filing bankruptcy or initiating any litigation. There is nothing in the Company Agreement that prohibits Delaflor, as the Operating Manager, from initiating this proceeding on behalf of the Debtor. To the contrary,

---

[1] The Debtor in this Chapter 11 case, along with the last four digits of its federal tax identification number, is Emergency Hospital Systems, LLC a/k/a Cleveland Emergency Hospital and d/b/a Cleveland Emergency Hospital. The Debtor's mailing address is 8901 FM 1960 Bypass Road, Humble, Texas 77338.

the Company Agreement vests in the Operating Manager the right to act as an agent of the Company in relation to Third Parties and outside affairs.

Moreover, Moparty is a creditor of the Debtor, given that Debtor has several written lease agreements for property and equipment with entities owned and/or controlled by Ravi and Roy Moparty. As set forth in the Adversary Complaint, Ravi and Roy, during their time as Operating Manger, breached their fiduciary duties by causing the Debtor to enter into grossly unfair and above-market leases that benefit themselves and their companies. These unfair lease arrangements have caused, and continue to cause, grievous harm to Debtor, so much so that Debtor does not have sufficient cash to operate its day-to-day operations, forcing the filing of this bankruptcy.

## ARGUMENTS AND AUTHORITIES

The Court should deny the Motion to Dismiss, because EHS' Company Agreement authorizes Delaflor to file bankruptcy. Moparty and KARE contend that Delaflor did not have authority to file bankruptcy on behalf of EHS, because the filing of the bankruptcy does not qualify as an ordinary business operation. But in making this argument, Moparty and KARE misunderstand the Agreement. The Company Agreement gives Delaflor, as the Operating Manager, the authority to run the day-to-day operations, to act as an agent of the company to third parties, to manage outside affairs, and to do all this on any terms the Operating Manager desires within his sole discretion.

Section 7.7.6(a) sets forth the "Powers and Duties" of the Operating Manager, and states that the Operating Manager is responsible for the "day-to-day operations of the Company." It is worth noting that the Agreement uses the term, "day-to-day" operations; not ordinary operations, not routine operations, not normal operations. The Operating Manager has authority to ensure the Company's day-to-day needs are met. In chapter 11 cases, a debtor will continue to operate as a

debtor-in-possession. 7 COLLIER ON BANKRUPTCY ¶ 1100.07 (Alan N Resnick & Henry J. Sommer eds., 16th ed.). In fact, the Bankruptcy Code specifically provides that a debtor-in-possession "may operate the debtor's business." 11 U.S.C. § 1108; *In re Avalon Hotel Ptnrs*, LLC, 302 B.R. 377, 381 (Bankr. D. Or. 2003) (recognizing that by filing a chapter 11 petition, a debtor is converted into a debtor-in-possession, charged with the fiduciary responsibilities of a trustee in bankruptcy under Section 1107(a)). Nothing in the Agreement requires the Operating Manager to maintain the "normal" or "ordinary" operations.

To that end, Section 7.7.6(a) then sets forth a non-exhaustive list of some of the Operating Manager's powers. (Dkt. 6-1, Company Agreement, § 7.7.6(a)). According to the Agreement, the powers and duties to manage the day-to-day operations "include, **but are not limited to**, the authority to:

> (i) bind and otherwise act as an agent of the Company in relation to **third parties** and **outside affairs;** …
>
> (viii) in the exercise of any of the foregoing powers, to negotiate, execute and perform, **on any terms deemed desirable within the Operating Manager's sole discretion**, such agreements, contracts, leases, instruments and other documents as the Operating Manager shall from time to time approve in accordance with, and subject to, the terms of this Agreement…"

*Id.* at 7.7.6(a)(i), (viii) (emphasis added). The filing of chapter 11 falls under both of these provisions. Per the Agreement, the Operating Manager has authority to bind EHS, and act as its agent to third parties and outside affairs. The filing of bankruptcy, or any litigation for that matter, is certainly an "outside affair" of the Company. Consistent with that, the Operating Manager may also "exercise any of the foregoing powers" on "any terms" that the Operating Manager deems desirable within his "sole discretion." This confirms that the Company Agreement gives the Operating Manager complete and total discretion to deal with third parties and outside affairs, which includes this bankruptcy and the related adversary proceeding, in any way he desires.

Notably, the Company Agreement does not place restrictions on the Operating Manager's ability to exercise his authority, as Delaflor may exercise his powers on any terms he desires within his sole discretion. *Id.*, § 7.7.6(a)(viii).  Although the Agreement contains an exhaustive list of "Major Decisions" that require a unanimous vote, the filing of a bankruptcy is not one of them. *Id.* at 7.1.2.  The amount of discretion afforded EHS' Operating Manager to handle EHS's outside affairs stands in stark contrast to the company agreements involved in cases cited by Moparty.  For instance, Moparty relies on *In re DB Capital* to argue that the filing of a bankruptcy represents a "radical departure" from a company's "normal" operations. (Dkt. 6, Mot. at 10.) While the bankruptcy court in *DB Capital* ultimately found that DB Management lacked authority to file bankruptcy, DB Capital's operating agreement was far more restrictive than EHS's, as it specifically required unanimous written consent for "any act that would make it impossible to carry on the **ordinary** business of the Company." *Id.* at 5. EHS' Company Agreement contains no such restriction.

Moparty also relies on *In re Lexington*, claiming that the company agreement in that case has similar language to EHS's Agreement. 577 B.R. 676, 686 (Bankr. E.D. Ky. 2017). Specifically, Moparty contends that *Lexington* involved language similar to Section 7.1.1, which states that, "The management and control of the Company is vested in the Board of Managers." Moparty posits that *Lexington* confirms that this language means that the decision to file bankruptcy should have been voted on and approved by a super-majority of EHS' board.  But what Moparty overlooks, and what is not discussed in *Lexington,* is that Section 7.6 of EHS' Agreement also states that the Board of Managers may assign or delegate its authority to any person.  (Dkt. 6-1, Agreement  at § 7.6). Indeed, in Section 7.7, the Agreement delegates authority to deal with "third parties" and "outside affairs" to the Operating Manager.  It is also worth noting that the *Lexington*

4

court actually held that the bankruptcy was authorized.  577 B.R. at 687.  The Court explained, "filing bankruptcy may be outside the ordinary course, but *it is a business decision and is connected to the business affairs of the Company*. Thus, Janee had authority under the Amended Operating Agreement and the Kentucky Act to file the petition for LHG." *Id.* (emphasis added). So too here, Delaflor has discretion to manage EHS's outside affairs, which includes the filing of the bankruptcy.

Moparty also attempts to characterize the bankruptcy as a transfer of all of EHS' assets, such that it qualifies as a "Major Decision" requiring a unanimous vote under Section 7.1.2. (Dkt. 6-1, Agreement.)  According to the Company Agreement, EHS' must unanimously vote to transfer "all or substantially all of the Company's assets or any significant portion thereof, whether via sale, transfer, assignment, disposal, trade, exchange, quitclaim, surrender, release or abandonment. Company property. [*sic*] or any interests therein, other than in the ordinary course of business." *Id.* at § 7.1.2(e).  Notably absent from the Major Decisions list is the word "bankruptcy," and this chapter 11 proceeding cannot be fairly characterized as a sale, transfer, assignment, disposal, trade, exchange, quitclaim, surrender, release, or abandonment. Under chapter 11, EHS is still a debtor-in-possession.  Moreover, although the Company Agreement is silent as to how a bankruptcy must be initiated, the word "bankruptcy" is contained in the Company Agreement.  Section 7.3 discusses the "Removal of Managers." Under that section, a manager may be removed if an order is entered against a manager for relief under any section of the Bankruptcy Code. *Id.* at § 7.3(c).  The mention of bankruptcy in the Agreement demonstrates that the parties considered the possibility of bankruptcy and its impact on EHS's operations, and yet they chose specifically not to list it as one of the "Major Decisions."  The Court should decline to re-write the parties' agreements and treat bankruptcy as a Major Decision, when it is evident that bankruptcy implications were considered

5

in the context of the Agreement, but bankruptcy was deliberately excluded from the Major Decisions list.

In support of its argument that the bankruptcy constitutes a transfer of all assets, Moparty cites *In re Aamagin Prop. Grp., LLC*, No. 23-383-JWD-RLB, 2024 WL 457801, at *4 (M.D. La. Feb. 6, 2024). This case is distinguishable on several grounds. First, this case involved a Chapter 7 bankruptcy, not a Chapter 11. Second, the company agreement in *Aamagin* placed specific restrictions on the company manager that are simply not an issue in this case. Specifically, the agreement in *Aamagin* said,

> "No act may be taken, sum expended, decision made or obligation incurred by the Company with respect to the following matters unless and until the same has been approved by a unanimous vote of the Members in accordance with their interest: ... (ix) any expenditure, acquisition, purchase, sale, exchange financing, contract, or any other type of transaction exceeding $3,000."

*Id.* at *3. Delaflor has *far* more authority to manage EHS.

There is no dispute that Delaflor has the authority to manage the day-to-day operations of the Company. The financial strain placed on the company by Moparty's extreme rent has placed its daily operations in jeopardy. From January 1, 2024 to July 1, 2024, EHS has paid $10.6 in rent to Moparty-affiliated entities for property and equipment leases. (Dkt. 30-1, Delaflor Dec.) These exorbitant leases, along with delayed payments for services rendered, has caused EHS to encounter critical cash flow issues. *Id.* These cash flow issues have substantially and materially interfered with EHS' ability to operate on a day-to-day basis, as EHS is unable to pay its regular, recurring operating expenses. *Id.* To keep those operations ongoing, Delaflor used the power invested in him by the Agreement to file for bankruptcy protection. This bankruptcy is necessary to restructure the debt, address accounts receivable collection issues, and solve issues related to the insider

leases. *Id.* In other words, EHS' ability to continue its day-to-day operations depends on this bankruptcy going forward.

## CONCLUSION

For these reasons, Debtor prays that the Court deny the Motion to Dismiss (Dkt. 6).

SEILER RAPP & GUERRA, PLLC

_Kenna M. Seiler_

Kenna M. Seiler
State Bar No. 13944250
Southern District Bar No. 16468
kseiler@srg-law.com
Megan Rapp
Texas Bar No. 24073924
Federal Bar No. 1260209
mrapp@srg-law.com
2700 Research Forest Drive, Suite 100
The Woodlands, Texas 77381
(281) 419-7770
(346) 223-0283– Facsimile

PROPOSED COUNSEL FOR
EMERGENCY HOSPITAL SYSTEMS, LLC

## CERTIFICATE OF SERVICE

I certify that on October 23, 2024, a true and correct copy of this document was served via this Court's ECF notification system or United States first-class mail to (a) the Office of the United States Trustee for the Southern District of Texas (b) the holders of the twenty (20) largest unsecured claims against the Debtors on an aggregate basis; and (c) those parties requesting notice pursuant to Bankruptcy Rule 2002, as listed on the attached list.

_Kenna M. Seiler_

Kenna Seiler