United States Bankruptcy Court
Southern District of Texas
**ENTERED**
December 05, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 24-34683 |
| **EMERGENCY HOSPITAL SYSTEMS, LLC,** | § § | |
| | § | |
| Debtor. | § | |
| | § | |
| | § | CHAPTER 11 |

## MEMORANDUM OPINION

Moparty Family Limited Partnership and KARE Family Limited Partnership LTD seeks dismissal of the instant Chapter 11 case and accompanying adversary proceeding on the basis that Emergency Hospital Systems LLC's Operating Manager, Dr. Rafael Delaflor-Weiss, lacked the corporate authority to file the bankruptcy petition. Dr. Delaflor-Weiss takes the position that the company's operating agreement empowered him with the authority to file a bankruptcy petition without the prior consent of Emergency Hospital Systems LLC's board of managers.

On October 24, 2024, the Court conducted an evidentiary hearing and based on a reading of the operating agreement and a review of applicable law, the Court concludes that as the Operating Manager, Dr. Delaflor-Weiss had full authority to file the subject petition. The motion to dismiss is denied. Furthermore, because the only basis to dismiss the adversary case was also on the basis of an unauthorized bankruptcy, the motion to dismiss the related adversary case number 24-3206 is also denied.

### I.   FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, which is made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent that any finding of fact constitutes a conclusion

of law, it is adopted as such. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such. This Court made certain oral findings and conclusions on the record. This Memorandum Opinion supplements those findings and conclusions. If there is an inconsistency, this Memorandum Opinion controls.

**A. Background**

1. On October 3, 2024, (the "*Petition Date*") Emergency Hospital Systems, LLC ("*EHS* or *Debtor*") filed for bankruptcy protection under chapter 11 of the Bankruptcy Code[1] initiating the bankruptcy case.

2. On October 3, 2024, EHS initiated adversary case No. 24-3206 (the "*Adversary Proceeding*") seeking both monetary and declaratory relief against, among others, Dr. Ravi Moparty and Roy Moparty.

3. On October 9, 2024, Moparty Family Limited Partnership and KARE Family Limited Partnership LTD ("*Moparty*") filed "Moparty Family Limited Partnership and KARE Family Limited Partnership LTD's Emergency Motion to Dismiss Unauthorized Chapter 11 Petition and Related Adversary Proceeding" (the "*Motion to Dismiss*").[2]

4. On October 10, 2024, the Court denied emergency consideration of the Motion to Dismiss.[3]

5. On October 14, 2024, Moparty filed "Moparty Family Limited Partnership and KARE Family Limited Partnership, Ltd.'s Emergency Motion to Reconsider Order (Dkt. 9) Denying Emergency Consideration of Emergency Motion to Dismiss Unauthorized Chapter 11 Petition and Related Adversary Proceeding (Dkt. 6)" ("*Motion to Reconsider*").[4]

6. On October 16, 2024, the Court granted the Motion to Reconsider.[5]

7. On October 23, 2024, Debtor filed its response to the Motion to Dismiss.[6]

8. On October 24, 2024, the Court held a hearing, ordered briefing, and now issues its instant Memorandum Opinion.

---

[1] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.
[2] ECF No. 6.
[3] ECF No. 9.
[4] ECF No. 12.
[5] ECF No. 20.
[6] ECF No. 55.

## II.     Conclusions Of Law

### A. Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[7] Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[8] This court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) and (O) this proceeding contains core matters, as it primarily involves proceedings concerning the administration of this estate.[9] This proceeding is also core under the general "catch-all" language because such a suit is the type of proceeding that can only arise in the context of a bankruptcy case.[10]

This Court may only hear a case in which venue is proper.[11] 28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." EHS has its principal place of business in Houston Texas and therefore, venue of this proceeding is proper.[12]

### B. Constitutional Authority to Enter a Final Order

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[13] The motion to

---

[7] *In re*: *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[8] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[9] *See* 11 U.S.C. § 157(b)(2)(A) & (O).
[10] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).
[11] 28 U.S.C. § 1408.
[12] ECF No. 1.
[13] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).

dismiss the bankruptcy case pending before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order here.[14] Alternatively, this Court has constitutional authority to enter a final order because all parties in interest have consented, impliedly if not explicitly, to adjudication of this dispute by this Court.[15] None of these parties has ever objected to this Court's constitutional authority to enter a final order or judgment. These circumstances unquestionably constitute implied consent. Thus, this Court wields the constitutional authority to enter a final order here.

### III.   ANALYSIS

**A.   Moparty's Motion to Dismiss**

In its Motion to Dismiss, Moparty asserts that the instant bankruptcy proceeding and the related Adversary Proceeding were not authorized by its governing authority, its board of managers.[16] EHS's board of managers consists of Dr. Ravi Moparty, Roy Moparty, and Dr. Rafael Delaflor-Weiss (the "*Board of Managers*").[17] The managers cycle through the role of operating manager on an annual basis.[18] Currently, Dr. Delaflor-Weiss is the Operating Manager and was responsible for the filing of the instant bankruptcy petition.[19] Dr. Delaflor-Weiss's term ends

---

[14] See, e.g., *Badami v. Sears (In re AFY, Inc.),* 461 B.R. 541, 547-48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); see also *Tanguy v. West (In re Davis),* No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' .... We decline to extend *Stern's* limited holding herein.") (Citing *Stern,* 564 U.S. at 475, 503, 131 S. Ct. 2594).
[15] *Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S.655, 135 S. Ct. 1932, 1947, 191 L.Ed.2d 911 (2015) ("*Sharif* contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . ..").
[16] ECF No. 6 at 7.
[17] ECF No. 6 at 5.
[18] ECF No. 53-5 at 26.
[19] *Id.*

December 31, 2024.[20] The operative question present before the Court is whether Dr. Delaflor-Weiss had sufficient authority to place EHS into bankruptcy.

"State law . . . determines" who can authorize a voluntary bankruptcy petition for a Limited Liability Company ("*LLC*") like EHS.[21] EHS is a Texas LLC, meaning Texas law will apply.[22] Under the Business Organizations Code, an LLC's "governing authority . . . shall direct the management of the business and affairs of the company and exercise or authorize the exercise of the powers of the company as provided by the company agreement."[23] Texas courts "apply general principles of contract construction" to interpret those agreements, and "[w]hen the provisions . . . are unambiguous, . . . enforce them as written."[24] In conducting that analysis, the Court must "bear[] in mind the particular business activity sought to be served" by the company agreement, and "need not embrace strained rules of interpretation which would avoid ambiguity at all costs."[25] The Company Agreement applicable here is the "Second Amended and Restated Company Agreement of Emergency Hospital Systems, LLC"[26] ("*EHS's Operating Agreement*"). Accordingly, the Court must examine the language of EHS's Operating Agreement.

1. **EHS's Operating Agreement**

Section 7 of EHS's Operating Agreement provides for the governance of EHS.[27] Specifically, the management and control of EHS is vested in its Board of Managers.[28] "Major Decisions" must

---

[20] ECF No. 6 at 6.
[21] *In re Franchise Servs. of N.A., Inc.*, 891 F.3d 198, 207 (5th Cir. 2018).
[22] *Id.*; *see also generally* ECF No. 6; ECF No. 55.
[23] TEX. BUS. ORG. CODE § 101.252(1).
[24] *Bay Area RV Parks, L.L.C. v. WGB RV Parks, LLC*, No. 01-021-00085-CV, 2023 WL 2248738, at *6 (Tex. App.—Houston [1st Dist.] Feb. 28, 2023, pet. denied) (mem. op.).
[25] *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527,530 (Tex. 1987).
[26] ECF No. 53-5.
[27] ECF No. 53-5 at 23; § 7.
[28] *Id.* at § 7.1.

be authorized or approved by unanimous approval of the Board of Managers.[29] "Major Decisions" as defined in EHS's Operating Agreement are defined as follows:

(a) Amending the Company's Certificate of Formation;

(b) Authorizing the merger, acquisition or other combination of the Company with or into another entity, the conversion of the Company from a limited liability company to any other form of business entity and/or authorizing the exchange of Membership Interests of the Company for the equity securities of any other entity;

(c) Substantially expanding the business of the Company by expansion of space or adding a new functionality to an existing location that is expected to require investment in excess of $500,000 (five hundred thousand U.S. Dollars);

(d) Terminating or significantly altering an existing lease for any facility (whether owned by an affiliate or member of the Company or otherwise) that is reasonably expected to result in loss of annual revenue in excess of $2,000,000 (two million U.S. Dollars);

(e) Transferring all or substantially all of the Company's assets or any significant portion thereof, whether via sale. transfer, assignment, disposal, trade, exchange, quitclaim, surrender, release or abandonment. Company property. or any interests therein, other than in the ordinary course of business;

(f) Determining the time and amounts of any distributions from the Company to the Members:

(g) Addition of new locations to conduct business;

(h) Addition of a new member (Manager or otherwise);

(i) Restriction of voting powers of a Manager; and

(j) Hiring and termination of the Senior Executive team, to include the following: Chief Executive Officer (CEO), Chief Financial Officer (CFO), and Director of Revenue Cycle.[30]

EHS's Operating Agreement also provides for the assignment or delegation of powers of the Board of Managers, and for the "day-to-day" operations of EHS to be supervised by an Operating

---

[29] *Id.* at § 7.1.2.
[30] *Id.* at 23-24; § 7.1.2.

Manager.[31] Pursuant to EHS's Operating Agreement, Dr. Delaflor-Weiss is the current Operating Manager of EHS (the "*Operating Manager*").[32] EHS's Operating Agreement defines the powers and duties of the Operating Manager as follows:

> (a) The Board of Managers shall delegate to the Operating Manager the powers and duties to manage the day-to-day operations of the Company. Day-to-day operations include, but are not limited to, the authority to:
>
> (i) bind and otherwise act as an agent of the Company in relation to third parties and outside affairs;
>
> (ii) ensure that all decisions of the Board of Managers are put into effect;
>
> (iii) preside at all meetings of the Board of Managers or appoint a designee to preside at all such meetings;
>
> (iv) call regular and special meetings of the Board of Managers or the Members in accordance with law and this Company Agreement;
>
> (v) authorize Company executives to expend the Company's Capital Contributions, proceeds and revenues and to execute and deliver all checks, drafts, endorsements and other orders for the payment of Company funds as needed to meet the routine business needs of Company;
>
> (vi) authorize Company executives to purchase, lease, rent or otherwise acquire or obtain the use of office equipment, materials, supplies, and all other kinds and types of real or personal property, and to incur expenses for travel, telephone, telegraph and for such other things, services and facilities, as may be deemed necessary, convenient or advisable for carrying on the routine business of the Company;
>
> (vii) authorize Company executives to enter into, make and perform any contracts, agreements, and other undertakings that are necessary or advisable for conducting Company's affairs or business;
>
> (viii) in the exercise of any of the foregoing powers, to negotiate, execute and perform, on any terms deemed desirable within the Operating Manager's sole discretion, such agreements, contracts, leases, instruments and other documents as the Operating Manager shall from time to time approve in accordance with, and subject to, the terms of this Agreement; and
>
> (ix) perform other duties that may be prescribed by the Board of Managers from time to time.

---

[31] *Id.* at 25-26; § 7.6, 7.7.
[32] *Id.*

> The enumeration of powers in this Agreement shall not limit the general or implied powers of the Operating Manager or any additional powers provided by law.
>
> The Operating Manager shall have the right to delegate, either orally or in writing, the performance of any or all of the powers enumerated in this Agreement to any other Member.[33]

Notably, the authority to file bankruptcy is not expressly listed as either a "major decision" or under the power and duties of the Operating Manager.[34] Moparty attempts to characterize the filing of bankruptcy as a "Major Decision" by asserting that the filing of a voluntary bankruptcy petition automatically results in a transfer of all the debtor's assets to the bankruptcy estate.[35] Nevertheless, 11 U.S.C. § 541 makes clear that when an order for relief is entered, an estate is created.[36] Such estate is comprised of the property enumerated in §§ 541 and 1115.[37] Put simply, property is not transferred into an estate, but the debtor's property is automatically designated as property of the estate.[38]

Moparty asserts alternatively, based on EHS's Operating Agreement, that because (1) the Board of Managers never authorized EHS's bankruptcy; and (2) the Operating Manager's powers and duties to manage the day-to-day operations do not permit the filing of bankruptcy, that dismissal is appropriate.[39] The Operating Manager conceded that the Board of Managers never authorized EHS's bankruptcy filing,[40] so the Court need only address Moparty's second argument.

---

[33] *Id.* at 26-27; § 7.7.6.
[34] *See generally* ECF No. 53-5.
[35] *In re Amagin Prop. Grp., LLC*, No. 23-383-JWD-RLB, 2024 WL 457801, at *4 (M.D. La. Feb. 6, 2024).
[36] 11 U.S.C. § 541
[37] 11 U.S.C. § 541; 11 U.S.C. § 1115.
[38] *In re Northwest Co.*, 2020 Bankr. LEXIS 1221, *10-11 (Bankr. S.D.N.Y. 2020) ("Based on the language of the Bankruptcy Code, the Supreme Court's decision in *Bildisco*, and the many other authorities I have cited above, I hold that the contention that the mere filing of a chapter 11 petition and the creation of a chapter 11 estate automatically amounts to a transfer or a disposition of substantially all of the Debtor's property for purposes of other laws is simply wrong, particularly where the debtor continues as a debtor-in-possession and continues to exercise dominion and control over its businesses and properties.").
[39] ECF No. 6 at 8-10.
[40] October 24, 2024 - Courtroom Hearing (Dr. Rafael Delaflor-Weiss testifying).

Accordingly, the Court will consider whether the Operating Manager was authorized to initiate EHS's bankruptcy filing.

### 2. Whether the Operating Manager was authorized to initiate EHS's bankruptcy

Moparty asserts that the Operating Manager was not authorized to initiate EHS's bankruptcy filing because the powers of the Operating Manager are limited to day-to-day operations.[41] In response, EHS asserts that EHS's Operating Agreement expressly permits the Operating Manager to "(i) bind and otherwise act as an agent of the Company in relation to third parties and outside affairs" and "(viii) in the exercise of any of the foregoing powers, to negotiate, execute and perform, on any terms deemed desirable within the Operating Manager's sole discretion…."[42] EHS further asserts that the filing of Chapter 11 falls under both provisions as the filing of bankruptcy or any litigation qualifies as an outside affair that the Operating Manager may deem desirable within his "sole discretion."[43]

As a preliminary matter, declaring bankruptcy is not a day-to-day activity of any company.[44] It is not ordinary for a limited liability company to file a bankruptcy.[45] However, the analysis of corporate authority to initiate bankruptcy does not conclude on this fact, it instead turns to the specific powers of the party purporting to act on behalf of the entity, and whether the party is authorized to make decisions necessary or advisable to effectuate and carry out the purposes of the business.[46]

---

[41] ECF No. 6 at 10.
[42] ECF No. 55 at 3.
[43] ECF No. 55 at 3.
[44] *See e.g.*, *In re Karben4 Brewing, LLC*, 661 B.R. 392, 396 (Bankr. W.D. Wis. 2024); *In re Avalon Hotel Partners, LLC*, 302 B.R. 377, 380 (Bankr. Or. 2003).
[45] *In re Crest by the Sea, LLC*, 522 B.R. 540, 545 (Bankr. D.N.J. 2014); *see also In re Zaragosa Properties, Inc.*, 156 B.R. 310, 312 (Bankr. M.D. Fla. 1993).
[46] *See e.g.*, *In re E. End Dev.*, 491 B.R. 633 (Bankr. E.D.N.Y. 2013).

EHS's Operating Agreement, while granting broad powers to the Operating Manager, is silent as to whether the Operating Manager has authority to file a petition in bankruptcy on behalf of EHS without the consent of the Board of Managers.[47] Likewise Texas LLC laws do not specify what type of consent is required by the members of an LLC prior to filing a petition in bankruptcy.[48] Nevertheless, EHS's Operating Agreement provides broad and substantial authority to the Operating Manager, including the ability to bind the Company in relation to third parties and outside affairs, to perform any undertaking "necessary or advisable" for carrying on the routine business of EHS, and the ability to execute any document as deemed desirable within the Operating Manager's sole discretion.[49] Furthermore, unlike the "Major Decisions" section of EHS's Operating Agreement, which is expressly defined through ten enumerated examples, the Operating Manager section includes a "catch-all" provision, that "the enumeration of powers in this Agreement shall not limit the general or implied powers of the Operating Manager…."[50] Through the plain terms of EHS's Operating Agreement, the Operating Manager is provided authority to undertake any actions necessary or advisable to effectuate and carry out the purposes, business, and objectives of EHS other than those specified as "Major Decisions."

At least two courts have held that when the governing agreement provides their company managers a broad grant of power, such managers had authority to file on behalf of their company.[51] In *In re East End Development, LLC*, the court found that because the operating agreement provided that the managing member would be given all necessary powers to manage the business and affairs, the governing agreement had sufficiently vested the requisite authority to file a

---

[47] *See generally*, ECF No. 53-5.
[48] *See e.g.*, TEX. BUS. ORGS. CODE § 101.251.
[49] ECF No. 53-5 at 27, § 7.7.6(a).
[50] *Id.*
[51] *In re Lexington Hospitality Group, LLC*, 577 B.R. 676, 681-82 (Bankr. E.D. Ky. 2017); *In re East End Dev., LLC*, 491 B.R. 633 (Bankr. E.D. N.Y. 2013).

bankruptcy petition.⁵² Similarly in *In re Lexington Hospitality Group, LLC*, the court found that while filing bankruptcy is outside the ordinary course, it is a business decision and is connected to the business affairs of the company, which under the applicable operating agreement and Kentucky law was sufficient to find that the company manager had authority to file the bankruptcy.⁵³

Nonetheless, Moparty asserts that bankruptcy is one of those decisions of such significance that it "must always be authorized" by the unanimous Board of Managers.⁵⁴ Moparty's position, however, requires this Court to read additional terms into EHS's Operating Agreement.⁵⁵ The Court need not do so when EHS's Operating Agreement plainly provides sweeping authority to the Operating Manager to undertake actions necessary or advisable to effectuate the business and objectives of the company.⁵⁶

The Court holds that the Operating Manager here, in his sole discretion determined that the filing was necessary for the purposes of EHS's operations, and accordingly the Operating Manager had the authority to file the petition for relief under Chapter 11.⁵⁷ Accordingly, the Motion to Dismiss is denied. Furthermore, because the only basis to dismiss the adversary case was also on the basis of an unauthorized bankruptcy, the Motion to Dismiss as to the adversary case is also denied.⁵⁸

---

⁵² 491 B.R. 633, 636-37 (Bankr. E.D.N.Y. 2013).
⁵³ 577 B.R. 676, 684-86 (Bankr. E.D. Ky. 2017).
⁵⁴ ECF No. 6 at 11.
⁵⁵ ECF No. 53-5 at 23.
⁵⁶ *See also Penny v. El Patio*, LLC, 466 S.W.3d 914, 919 (Tex. App.—Austin 2015, pet. denied) (finding that the LLC's operating agreement granted its operating managers all powers and rights necessary, proper, convenient, or advisable to effectuate and carry out the purposes, business and objectives of the Company, and to maximize Company profits by permitting the operating manager to file a lawsuit against those who misappropriated the LLC's funds).
⁵⁷ October 24, 2024 – Courtroom Hearing (Dr. Rafael Delaflor-Weiss testifying).
⁵⁸ *Matter of Querner*, 7 F.3d 1199, 1201 (5th Cir. 1993) ("[A]s a general rule the dismissal . . . of a bankruptcy case should result in the dismissal of related proceedings.").

### IV. CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED December 5, 2024

_____
Eduardo V. Rodriguez
Chief United States Bankruptcy Judge